(160 App. Div. 859)

## SHERMAN v. BROWN.

(Supreme Court, Appellate Division, Third Department.   March 4, 1914.)

1. BOUNDARIES (§ 14*)—DESCRIPTION IN DEED—LAND UNDER WATER.

   Where a deed under which plaintiff claimed title described a division line in dispute as running along the westerly side of the pond and beginning at the southeast corner of the lot at a chestnut stump on the west side of the pond, thence up the said pond north 43¼ degrees, etc., which line ran along the westerly bank of the pond in places 30 feet or more from the water and in places nearer, plaintiff's record title did not extend to the thread of the pond.

   [Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 102–107; Dec. Dig. § 14.*]

2. BOUNDARIES (§ 48*)—POND—RIGHT OF OWNERSHIP—RECOGNITION.

   Where part of the east line of plaintiff's land extended for a part of the distance along the bank of the upper portion of a pond some distance from the water, the acts of defendant's grantors, in extending the south line fence to and into the water to keep plaintiff's cattle off defendant's land to the south without being required to build the fence along the whole division line between plaintiff's land and the lands of defendant along the westerly bank of the pond, did not constitute recognition of plaintiff's ownership of the bank and shore of the pond opposite his land.

   [Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 232–242; Dec. Dig. § 48.*]

Appeal from Trial Term, Columbia County.

Action by Frank Sherman against Ernest C. Brown. Judgment for defendant, and plaintiff appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, and WOODWARD, JJ.

Crandell & Graf, of Hudson, for appellant.

Charles E. Lydecker, of New York City, for respondent.

LYON, J. This action was brought to restrain defendant from trespassing upon land claimed by plaintiff to belong to him situated in the town of Copake, Columbia county; the plaintiff alleging that in June, 1912, the defendant entered upon plaintiff's lands and erected a fence which prevented plaintiff's cattle from obtaining water at Robinson Pond. The defense was that the fence erected by defendant was upon the division line between the properties of the plaintiff and defendant.

[1] The common source of title was John Swift Livingston, who in 1810 was the owner of a large tract of land through which ran Roeleff Jansen's Kill. This stream had been dammed where the road crossed it, and the water setting back upon the land known as the Unity Mill, or Griffin Farm, had created the pond. At the dam a saw and grist mill had been erected which is still being operated. In

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

October, 1810, Livingston caused his said lands to be surveyed by Augustus Treman and laid out into farms. The farm west of the northerly three-fourths of the pond was known as the "Marks Drom," and has for some years been owned by the plaintiff. The farm adjoining it on the south and east, which included the land covered by said pond, and a margin around the same, was known as the Unity Mill Farm, and has for some years been owned by the defendant. In 1821, John Swift Livingston mortgaged the Marks Drom, the Rachel Robinson Farm at the north end of the pond, and the Unity Mill Farm to one William Edgar, describing said farms by their metes and bounds in accordance with the Treman survey. In 1830, the Rachel Robinson Farm and Marks Drom were released from the lien of said mortgage by metes and bounds in accordance with the description contained in the mortgage, leaving the Unity Mill Farm still covered by the mortgage. In 1830, John Swift Livingston conveyed the Marks Drom to Rowland Sweet, who was the grandfather and the remote grantor of the plaintiff, describing the same by courses and distances in accordance with the Treman survey; the dividing line in dispute between the Marks Drom and the Unity Mill Farm running along the westerly side of Robinson Pond being described as "beginning at the southeast corner of said lot at a tall chestnut stump on the west side of the mill pond, thence up the said pond north forty-three and a quarter degrees, east two chains and ninety links, north nineteen degrees, east four chains and sixty links, north twenty-six degrees, four chains," etc., particularly stating the courses and distances of the division line between the lands now owned by the parties. Such line ran along the westerly bank of the pond in places 30 feet or more from the water and in places much nearer. In 1841, Rowland Sweet conveyed the Marks Drom to his son, Fyler D. Sweet, by metes and bounds practically identical with the conveyance to him so far as related to the division line between that farm and the Unity Mill Farm. In 1879, Fyler D. Sweet conveyed that farm to his daughter, Betsy Sherman, the mother of the plaintiff, by a general description of the lands bounding it easterly by the millpond, which description was followed in all subsequent conveyances of the Marks Drom. In 1833, John Swift Livingston conveyed to Isaiah and Isaac Griffin, who were the remote grantors of the defendant, the Unity Mill Farm, describing the division line between that farm and the Marks Drom as stated in the above-mentioned conveyance of that farm to Rowland Sweet. This description was followed as to this division line between the lands of the respective parties in deeds and mortgages until the year 1873, since which time the description has been general, describing the Unity Mill Farm as bounded by the lands of the adjoining owners. In 1909, the Unity Mill Farm was conveyed to the defendant by deed describing the westerly boundary as by lands of the plaintiff. It plainly seems to have been the intention of John Swift Livingston that the Unity Mill Farm should contain all the lands covered by the waters of the pond, including its banks, for the benefit of the mill and its privilege.

The evidence establishes that the fence erected by the defendant, of

which the plaintiff complains, was upon the line of the survey of 1810. It is the claim of the plaintiff that his land extends to the thread of the stream in the pond, and he bases such claim upon the general description in the deed to him and his predecessors in title, following Fyler D. Sweet, and upon adverse possession by inclosing and cultivating the land for fully 30 years. The court vacated the temporary injunction and denied the plaintiff the relief sought, and from the judgment entered thereon this appeal has been taken.

The trial justice found that a stone wall separated the land of the plaintiff on the south from the land of the defendant and is a division fence, which has existed for over 50 years, and that the easterly portion extends from the top of the hill into the water and has been kept and maintained by the owners of the Unity Mill Farm during all that time. Concededly, prior to June, 1912, no fence had ever been erected between the east line of the Marks Drom, as described in the survey of 1810, and the waters of the pond; but the same has remained open, and trees, brush, and vegetation have grown thereon, and the cattle on plaintiff's farm have pastured on some parts thereof, and watered at the pond. While some portions of said strip have been cultivated by the owners of the Marks Drom, the extent thereof, although probably not large, does not appear. At all times since the survey of 1810 the owner of the Unity Mill Farm has been in possession thereof, and the acts of the plaintiff and his predecessors in title have not been such as would give notice that they claimed to own the land.

[2] The act of the defendant's grantors in extending the fence on the south line of plaintiff's farm to and into the water was not a recognition of plaintiff's ownership of the bank and shores of the pond, but was for the purpose of keeping plaintiff's cattle off defendant's land without defendant being required to build a fence upon the whole division line between the lands of the plaintiff and defendant along the westerly bank of the pond.

The appellant complains of finding No. 16, to the effect that plaintiff waived the question of damages, and says the finding was not warranted. This is hardly the fact, as at the opening of the trial the counsel for the plaintiff stated, "Now the issue will be as to the title to this land and the right of Mr. Brown to build this fence," and later, "We concluded not to go over the question of damages, but to try the question of title." Also, the appellant claims that the court granted certain of plaintiff's requests to find, and thereby made findings inconsistent with those constituting the decision, referring to plaintiff's requests to find first, second, seventh, eighth, ninth, tenth, and eleventh. The inconsistency consists in applying the statements contained in requests to find 1 to 13, inclusive, to "the premises described in the complaint," stated in the first request to find. The complaint described plaintiff's premises as bounded east by the Robinson Millpond. Had these requests applied simply to the premises bounded east by the line of the Treman survey, or in terms by the lands of the defendant, as it was plainly intended by the trial justice that they should apply, each would have been entirely consistent with

the findings contained in the decision. The refusals to find plaintiff's requests 14 to 18 inclusive, 20, 24, 27, 35, and 36 are consistent with the decision and indicate that the trial justice intended that the requests to find 1 to 13 should apply to the land of plaintiff to the Treman line. The decision of the case by the trial court was right and should be affirmed, but with the statement that we disapprove of the findings of the trial court in response to plaintiff's requests to find No. 1 to 13, inclusive, so far as such findings may be held to apply to any lands east of the easterly line of the lands described in the said deed from John Swift Livingston to Rowland Sweet of date June 7, 1830, recorded in the office of the clerk of Columbia county in Book V of Deeds, p. 132. All concur.